IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| EARL EZZARD JONES, : | |
| : | |
| Plaintiff, : | |
| VS. : | |
| : | NO. 5:15-CV-18-CAR-CHW |
| WARDEN DONALD BARROW *et al.*, : | |
| : | |
| Defendants. : | |
| _____ : | |

### ORDER

In response to an Order by the Magistrate Judge requiring *pro se* Plaintiff Earl Ezzard Jones to inform the Court whether he wished to proceed with this case, Plaintiff filed a "Motion to Proceed with Preliminary Steps" in which he states he "wishes to proceed, and go forward with a preliminary review" of his complaint. (ECF No. 7 at 1.) Plaintiff, an inmate at the Georgia State Prison in Reidsville, Georgia, has also filed a Motion to Appoint Expert Witness (ECF No. 8) and a Motion to Appoint Counsel (ECF No. 9). The Court **GRANTS** Plaintiff's "Motion to Proceed with Preliminary Steps" and after conducting the preliminary screening of Plaintiff's Complaint finds that each of Plaintiff's claims fails to state a claim upon which relief may be granted and that Plaintiff's Complaint must be **DISMISSED**. *See* 28 U.S.C. § 1915A(a) (requiring preliminary screening of complaint where plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity"). The Court also concludes that Plaintiff's motions to appoint counsel and an expert witness should also be **DENIED.**

I.     **Motion to Appoint Counsel**

Plaintiff has moved for the appointment of counsel. Under 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). In deciding whether legal counsel should be provided, the Court considers, among other factors, the merits of Plaintiff's claims and the complexity of the issues presented. *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989) (en banc).

In this case, Plaintiff has filed a *pro se* complaint on a standard § 1983 form. The Court is now required to review the Complaint to determine whether Plaintiff's allegations state a colorable legal claim. This process is routine in *pro se* prisoner actions and is thus not an "exceptional circumstance" justifying appointment of counsel. The facts stated in Plaintiff's Complaint are not complicated, and the law governing Plaintiff's claims is neither novel nor complex. Plaintiff's motion to appoint counsel (ECF No. 9) is accordingly **DENIED**.

II.    **Motion to Appoint Expert Witness**

Plaintiff also seeks to have the Court appoint an expert witness pursuant to Federal Rule of Evidence 706. Rule 706 "provides the court with discretionary power to appoint an expert witness either on the court's own motion or the motion of a party." *Steele v.*

2

*Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996). "The district court's discretion on whether or not to appoint an expert should be exercised and reflected in a reasoned ruling." *German v. Broward County Sheriff's Office*, 315 F. App'x 773, 778 (11th Cir. 2009) (per curiam).

Rule 706 is intended to promote accurate factfinding. *See Ford v. Mercer County Corr. Center*, 171 F. App'x 416, 420 (3d Cir. 2006). It is "not intended to ensure that indigent plaintiffs have access to expert witnesses in order to make their case." *Stones v. McDonald*, 7 F. Supp.3d 422, 432 (D. Del. 2014). "'The most important factor in favor of appointing an expert is that the case involves a complex or esoteric subject beyond the trier-of-fact's ability to adequately understand without expert assistance.'" *Id.* (quoting 29 Charles Allen Wright & Victor James Gold, *Federal Practice & Procedure* § 6304 (1st ed. 2015)). Plaintiff has not stated in his motion why an expert needs to be appointed in his case, and the medical issues presented are not so complex as to require a court-appointed expert to assist in screening Plaintiff's Complaint. Plaintiff's motion (ECF No. 8) is therefore **DENIED.**

### III. Preliminary Screening

#### a. Standard of Review

When conducting preliminary screening under 28 U.S.C. § 1915A, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which

3

relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See*

4

*Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

### b. Factual Allegations

According to Plaintiff's Complaint, on August 30, 2012, Plaintiff informed Nurse "Jane Doe" that he suffered from chronic pain, swelling, and numbness in his back, shoulders, and lower extremities caused by two deteriorated discs in his lower back. On September 12, 2012, Plaintiff was evaluated by Defendant Snyder, a nurse practitioner. Ms. Snyder informed Plaintiff that he was not entitled to a "soft shoe" or prolonged standing profile, but that she would order x-rays for further evaluation. (Compl. 5, ECF No. 1.)

On September 20, 2012, Plaintiff had an appointment with Defendant Ramsey, another practitioner. Defendant Ramsey did not examine Plaintiff, but informed Plaintiff that he did not meet the requirements for any profile and that he was not scheduled for any x-rays, treatment, or other follow up. Plaintiff requested pain medication, and Defendant Ramsey prescribed ibuprofen. *Id.* at 6.

On October 9, 2012, Plaintiff's counselor accompanied him to medical, where he met with Nurse Cummings and Nurse Jane Doe and provided "all [his] medical information" and received an appointment to be treated. *Id.* at 7. The next day, Plaintiff met with Defendant Ramsey and they discussed Plaintiff's medical records and the treatment Plaintiff received from doctors in the past. Plaintiff contends Defendant Ramsey again failed to examine him and "started stating things [Plaintiff] could not receive." *Id.* Plaintiff told Defendant Ramsey that "if he wasn't going to help me with my medical problems, that I shouldn't even be in his office." *Id.* Plaintiff left Defendant

Ramsey's office and filed a grievance, presumably regarding Defendant Ramsey's failure to provide adequate medical treatment. *Id.* at 8.

On October 19, 2012, Plaintiff submitted his grievance to the warden of care and treatment, Ms. Mickens, and requested that he be removed from work detail due to his medical condition. Ms. Mickens stated that she was not authorized to remove Plaintiff from work detail but called medical and scheduled another appointment for Plaintiff to meet with Defendant Taylor, the medical director. *Id.* At this appointment, Defendant Taylor reviewed Plaintiff's medical records and noticed that the x-rays scheduled by Defendant Snyder had been canceled. *Id.* at 9. When Plaintiff requested an appointment for medical treatment, Defendant Taylor informed Plaintiff that he would have to fill out a sick call slip and would be required to pay for the visit. Plaintiff filed a grievance against Defendant Taylor, again presumably contesting the failure to provide adequate medical care and the requirement that Plaintiff pay for the medical visit.

Plaintiff went to medical again on December 18, 2012 after returning from court, but he contends he was "not asked about [his] medical condition." *Id.* Warden Mickens also encouraged Plaintiff in December to discuss his issues with Mr. Taylor, but Plaintiff believed that would be futile and decided he "would just not go to medical." *Id.* at 10.

More than six months later, on June 24, 2013, Plaintiff again went to medical to have a lipoma on his neck examined and to be treated for an ear infection. *Id.* Plaintiff was examined by Defendant Dr. Rogers on July 1, 2013 and July 22, 2013. Plaintiff also requested a lower-bunk profile from Defendant Rogers but was told that was not "his department" and that Plaintiff would have to obtain a profile from Defendant Snyder. *Id.*

6

On August 5, 2013, Plaintiff was relocated to a bottom bunk. *Id.* at 11.

Plaintiff also had an annual physical in August of 2013, during which he mentioned his medical problems to the examining doctor. *Id.* On August 12, 2013, Plaintiff was seen by Defendant Snyder and Nurse King. Plaintiff informed Defendant Snyder that he was experiencing neck pain, but Defendant Snyder allegedly made no effort to refer Plaintiff for additional medical care. *Id.*

On September 6, 2013, Plaintiff filed another grievance stating that medical staff had not responded appropriately to his ear infection, that his condition was worsening, and that the medical department was biased against him. *Id.* at 12. Plaintiff was seen by Dr. Rogers on September 12, 2013. Plaintiff contends he still has pain in both ears as of December 29, 2013. *Id.*[1]

### c. Plaintiff's Eighth Amendment Claims

Plaintiff seeks to hold Defendants liable for failure to provide adequate medical care, in violation of the Eighth Amendment to the United States Constitution. A prisoner who demonstrates that a prison official was deliberately indifferent to his serious medical

---

[1] The Court notes that many of the events about which Plaintiff complains occurred more than two years prior to the date the Complaint was filed. It is unclear from the face of the Complaint, however, whether the two-year statute of limitations applicable to § 1983 cases was tolled while he exhausted those remedies. Thus, the Court will not rely on the statute of limitations to dismiss Plaintiff's claims at this stage. *See Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1280 (11th Cir. 2001) (per curiam) (court erred in dismissing complaint on statute of limitations grounds during preliminary screening where limitations period may have been tolled while plaintiff exhausted administrative remedies).

needs can state a claim under the Eighth Amendment. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

### i. Claims against Warden Barrow

The basis for Plaintiff's claims against Warden Barrow is unclear from the complaint. Supervisors, such as Warden Barrow, can only be held liable under § 1983 if they personally participated in the allegedly unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). A causal connection can be established if the plaintiff shows

> (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

The only allegation against Warden Barrow in Plaintiff's Complaint is that Plaintiff sent Warden Barrow letters informing him that Plaintiff was experiencing pain and swelling, awaiting x-rays, and desired a "no-prolonged-standing" profile; Warden Barrow did not respond to those letters. (Compl. 6.) Plaintiff's Complaint does not allege that Warden Barrow personally participated in any medical decision-making, had any customs or policies regarding medical care, directed any of his subordinates to act unlawfully, or knew they were doing so and failed to stop them. Furthermore, while the

letters Plaintiff sent to Warden Barrow may have informed Warden Barrow of Plaintiff's belief that he was not receiving the level of medical care he desired, they fall short of informing Warden Barrow of the kind of "widespread abuse" that is required to impose supervisory liability on a prison official. *See Hendrix*, 535 F. App'x at 805 (plaintiff's contention that supervisors were on notice of need to correct constitutional deprivations because supervisors were aware of his administrative grievances and state court litigation was insufficient to establish that any alleged abuse was more than just an isolated occurrence); *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that two defendants who were not medical professionals could not be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"). The claims against Warden Barrow are therefore **DISMISSED without prejudice.**

### ii. Claims against Defendants Taylor, Rogers, Snyder, and Ramsey

Plaintiff's allegations, even when viewed in his favor, do not include sufficient facts to show that Defendants Taylor, Rogers, Snyder or Ramsey acted with "deliberate indifference" to a "serious medical need," as would be required to state an actionable Eighth Amendment claim. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow*, 320 F.3d at 1243. A plaintiff must first "set forth evidence of an objectively serious medical need," and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* In other words, prison officials must both

9

"know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam). "Mere negligence in diagnosing or treating a medical condition, or even medical malpractice, does not state an Eighth Amendment claim of medical mistreatment." *Id.* Moreover, "[w]hether prison officials should have employed additional diagnostic techniques or care is an example of medical judgment and not an appropriate basis for § 1983 liability." *Id.*

Plaintiff has failed to adequately plead a "serious medical need," i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). "In either of those situations, the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (alteration in original)). Plaintiff has alleged that he suffered from chronic pain, swelling, and numbness, a lipoma, and an ear infection. (Compl. 5-6, 10.) While these conditions could conceivably be objectively serious, Plaintiff has not alleged sufficient facts to allow the Court to reach that conclusion. Plaintiff's conclusory allegations about the pain, swelling, and numbness originating from his deteriorated discs do not demonstrate that his condition obviously requires treatment or poses a substantial risk of serious harm if left unattended. Nor does Plaintiff allege that the lipoma caused him any pain or discomfort. *See John v. Cochran*, No. 12-0001-CG-M, 2013 WL 5755189, at *11 (S.D. Ala. Oct. 22, 2013) ("[A] fatty tumor, medically referred to as a 'lipoma,' is not considered an objectively serious medical condition."). Plaintiff actually stated that his

10

ear infection had resolved at one point, (Compl. 10), and he does not allege any specific facts that would show that his ear infection was anything more than "a common malady that typically causes no impairment." *Cf. Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (per curiam) (plaintiff raised material question of fact whether he suffered from objectively serious medical condition where he alleged ear infections lingered for months, required intensive treatment, and led to permanent loss of hearing).

Even assuming Plaintiff's medical conditions were sufficiently serious to implicate the Eighth Amendment, however, Plaintiff fails to allege sufficient facts to allow the Court to determine whether any Defendants acted with "deliberate indifference" to his serious medical needs. To establish "deliberate indifference," Plaintiff must show that a Defendant had (1) subjective knowledge of a risk of serious harm, and (2) disregarded that risk (3) by conduct that is more than gross negligence. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *Townsend v. Jefferson County*, 601 F.3d 1152, 1158 (11th Cir. 2010).

From August 30, 2012 until December 23, 2012, while Plaintiff was seeking treatment for his back problems, Plaintiff saw a half-dozen medical professionals: (1) Nurse "Jane Doe," (2) Defendant Snyder (a nurse practitioner or physician's assistant), (3) Defendant Ramsey (described by Plaintiff as a "practitioner"), (4) Defendant Taylor (the medical director of the jail), (5) Nurse Cummings, and (6) another "Jane Doe" nurse. (Compl. at 5-10.) Plaintiff was also sent "to medical" after he returned from court on December 18, 2012, he was able to discuss his condition with Ms. Mickens, the "warden of care and treatment," and he was prescribed ibuprofen for pain. *Id.* at 6, 8, 9.

11

From June 24, 2013 until December 29, 2013—the last date identified in Plaintiff's Complaint—while Plaintiff was seeking treatment primarily for the lipoma and ear infection, Plaintiff saw (1) Nurse O'Neal; (2) Defendant Dr. Rogers (three times); (3) Defendant Snyder; (4) Dr. John Doe; and (5) Nurse King. *Id.* at 10-12. Plaintiff admits he was treated for his ear infection and "was fine" on a follow up visit with Defendant Rogers, and Defendant Snyder reviewed his medical records and assured Plaintiff that the lipoma was not malignant. *Id.* at 11. Even though Plaintiff contends some Defendants did not "examine" him, those Defendants reviewed his medical records or spoke with Plaintiff about his symptoms, *see, e.g., id.* at 6-7, and Defendants would also have had the opportunity to observe Plaintiff and any outward manifestation of his symptoms. Plaintiff is simply not constitutionally entitled to x-rays or any other form of diagnostic test or treatment of his choosing. *See, e.g., Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Plaintiff's Complaint demonstrates that he did, in fact, receive treatment for the medical conditions of which he complains—he just did not receive the medical treatment he desired. *Estelle*, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . ."). Plaintiff's allegations therefore fail to state a constitutional claim.

Based on the foregoing, the Court finds that Plaintiff's claims for deliberate indifference to his serious medical needs against all Defendants are **DISMISSED without prejudice.**

IV. **Conclusion**

The Court therefore **DISMISSES** Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted**.**  This dismissal is without prejudice.  As noted above, the Court also GRANTS Plaintiff's "Motion to Proceed with Preliminary Steps" (ECF No. 7), and **DENIES** Plaintiff's Motion to Appoint Expert Witness (ECF No. 8) and Plaintiff's Motion to Appoint Counsel (ECF No. 9).

**SO ORDERED**, this 9th day of July, 2015.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE